**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| CANATELO, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 13-1227-GMS |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| AXIS COMMUNICATIONS AB, | ) | |
| AXIS COMMUNICATIONS, INC., | ) | |
| COMMUNICATIONS SUPPLY CORPORATION, | ) | |
| and PREVENT ALARM, COMPANY, L.L.C. | ) | |
| d/b/a PREVENT SECURITY & TECHNOLOGY | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS', AXIS COMMUNICATIONS AB'S AND**
**AXIS COMMUNICATIONS INC.'s OPENING**
**BRIEF IN SUPPORT OF MOTION TO STAY PENDING *INTER PARTES* REVIEW**

OF COUNSEL:

Anthony S. Volpe
Michael F. Snyder
Gerald B. Halt, Jr.
Aneesha A. Mehta
VOLPE & KOENIG, P.C.
30 S. 17th Street
Philadelphia, PA 19103
Tel:  (215) 568-6400

Dated:  February 14, 2014
1139439 / 40668

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Nicholas J. Brannick (#5721)
POTTER ANDERSON & CORROON LLP
Hercules Plaza 6th Floor
1313 N. Market Street
Wilmington, DE  19899
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
nbrannick@potteranderson.com

*Attorneys for Defendants*
*AXIS Communications AB and*
*AXIS Communications, Inc.*

## **TABLE OF CONTENTS**

I.      PARTIES, NATURE AND STAGE OF THE PROCEEDING ........................................1

      A.      AXIS AB and AXIS INC ...................................................................................1

      B.      Canatelo ...............................................................................................................1

      C.      Status of the Litigation .......................................................................................2

      D.      AXIS's Petitions and IPRs .................................................................................2

II.     SUMMARY OF THE ARGUMENT ...............................................................................3

III.    LEGAL STANDARDS .....................................................................................................4

IV.     LEGAL ARGUMENT .......................................................................................................5

      A.      A Stay Will Simplify The Issues ........................................................................5

            1.      The IPR Will Allow The PTAB To Review The Newly Presented
                 Prior Art Against the Asserted Patents ......................................................5

            2.      The Court Will Benefit From The PTAB's Expertise............................10

      B.      There Is No Undue Prejudice Or A Clear Tactical Disadvantage To
           Canatelo............................................................................................................12

      C.      The Case Is Still At An Early Stage.................................................................13

V.      CONCLUSION ................................................................................................................14

# TABLE OF AUTHORITIES

CASES

**Pages**

*AIP Acquisition LLC v. Level 3 Communications LLC*,
  C.A. No. 12-1689-GMS, slip op. at 4-5 (D. Del, May 17, 2012) ................................... 10, 11

*Alloc, Inc. v. Unilin Decor N.V.*,
  C.A. No. 03-253-GMS, 2003 U.S. Dist. LEXIS 11917 (D. Del. July 11, 2003).................. 11

*Canatelo, LLC v. Panasonic Corporation of North America et al.*,
  Case No. 3:13-cv-01090-ADC (D.P.R. February 5, 2014)) .................................................. 12

*E. I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*,
  849 F.2d 1430 (Fed. Cir. 1988) .......................................................................................... 11

*Ever Win Int'l Corp. v. Radioshack Corp.*,
  902 F. Supp. 2d 503 (D. Del. 2012) ................................................................................... 13

*Gioello Enterprises Ltd. v. Mattel, Inc.*,
  2001 U.S. Dist. LEXIS 26158 (D. Del. Jan. 29, 2001) ....................................................... 11

*Gould v. Control Laser Corp.*,
  705 F.2d 1340 (Fed. Cir. 1983) .......................................................................................... 10

*High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*,
  49 F.3d 1551 (Fed. Cir. 1995) ............................................................................................ 13

*Neste Oil Oyj v. Dynamic Fuels, LLC, et al.*,
  C.A. No. 12-1744-GMS, 2013 U.S. Dist. LEXIS 92416 (D. Del. July 2, 2013)............*Passim*

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) .......................................................................................... 11

*Pragmatus AV, LLC v. Facebook, Inc.*,
  No. C 11-0494 EJD, 2011 U.S. Dist. LEXIS 114763 (N.D. Cal. Oct. 5, 2011)..................... 13

*Sorensen v. Black & Decker Corp.*,
  Case No. 06cv1572 BTM (CAB), 2007 U.S. Dist. LEXIS 66712 (S.D. Cal. Sept. 10,
  2007)................................................................................................................................... 11

*Wall Corp. v. BondDesk Grp., L.L.C.*,
  C.A. No. 07-844-GMS, 2009 U.S. Dist. LEXIS 20619 (D. Del. Feb. 24, 2009) .................. 12

STATUTES

35 U.S.C. § 314(b) ...................................................................................................... 2, 13

35 U.S.C. § 316(a)(11) ........................................................................................................13

37 C.F.R. § 42.100(c) ...........................................................................................................2

37 C.F.R. § 42.107 ..............................................................................................................13

37 C.F.R. § 42.107(b) ...........................................................................................................2

Defendants, AXIS Communications, Inc. ("AXIS INC") and AXIS Communications AB ("AXIS AB") (collectively, "AXIS"), by and through their undersigned counsel, submits this Brief in support of its motion for an order staying this litigation pending the outcome of two petitions ("Petitions") for *Inter Partes* Review ("IPR") of U.S. Patent Nos. 6,476,858 (the '858 Patent) and 7,310,111 (the '111 Patent) (collectively the "Asserted Patents") that were filed with the United States Patent and Trademark Office ("PTO") by AXIS on January 30, 2014.

As discussed in greater detail below, this case is in its very early stages.  Staying the present matter will simplify the case, and a stay presents no undue prejudice to Plaintiff, Canatelo LLC ("Plaintiff" or "Canatelo").

## I.      PARTIES, NATURE AND STAGE OF THE PROCEEDINGS

This is a case for patent infringement.  The First Amended Complaint alleges that both AXIS INC and AXIS AB infringe the Asserted Patents. (D.I. 7).

### A.      AXIS AB and AXIS INC

AXIS AB is a global market leader in the field of security and network cameras, network video and digital video surveillance.  (Exhibit A).  AXIS AB was founded in 1984, and has marketed and sold its network camera equipment since 1996.  *Id.*  AXIS AB stresses innovation and collaborations with universities and colleges.  *Id.*  AXIS INC markets, sells, and offers support from its offices in Chelmsford, Massachusetts for AXIS AB's "AXIS" brand video surveillance products in North America.

### B.      Canatelo

Canatelo is a "non-practicing entity" or "NPE" and is not a competitor of AXIS's in the video surveillance field.  Canatelo does not make or sell any video surveillance goods.  Canatelo filed twenty-three (23) different lawsuits against more than fifty defendants alleging

infringement of the Asserted Patents.  (Exhibit B).  Of those, sixteen (16) cases have now been dismissed, either voluntarily or by stipulation.

### C.        Status of the Litigation

The pleading stage is not complete, as Canatelo's answers to AXIS's Amended Counterclaims (D.I. 40 and 41) remain outstanding.  No discovery has been exchanged in this matter.  The Court held a status conference call on Friday, February 7, 2014, where staying the litigation was discussed, and AXIS was directed to file this motion by February 14, 2014.  No scheduling ordered has been entered.

### D.        AXIS's Petitions and IPRs

On January 30, 2014, AXIS filed the IPR Petitions for the Asserted Patents (IPR Case No. IPR2014-00394, for the '858 Patent; IPR Case No. IPR2014-00396, for the '111 Patent).  As set forth in the attached IPR Petitions (Exhibits C and D)[1], AXIS presented prior art that renders all claims of the Asserted Patents invalid.

Once a notice to grant a filing date issues, Canatelo has three months to file its preliminary responses to the Petitions.  37 C.F.R. § 42.107(b).  The Patent Trial and Appeal Broad ("PTAB") must decide whether to institute an IPR within three (3) months of the patent owner's preliminary response, or in the event no response is filed, by the last date on which the response could have been filed. 35 U.S.C. § 314(b).  An IPR proceeding is to be conducted such that the pendency after institution is not more than one (1) year, extendable up to six (6) months for good cause, or adjusted for joinder.  37 C.F.R. § 42.100(c).  PTAB decisions on the IPRs should issue by May 2015.

---

[1]         The voluminous Exhibits filed with the Petitions are not submitted with this filing.  Only those specific prior art references discussed herein have been attached.

2

As discussed in more detail below, the prior art relied upon in the Petitions is particularly devastating to the claims of the Asserted Patents, and the chance of invalidating all patent claims is high.  According to the PTO's statistics, the PTAB has instituted IPRs in 79.4% of the petitions considered as of February 6, 2014.  (See Declaration of Aneesh Mehta ("Mehta Decl.") ¶¶ 2-6, Exhibit 1).

## II.  SUMMARY OF THE ARGUMENT

The Court should stay this case pending the outcome of the IPRs based on the following three factors:

1. <u>Simplification</u>. A stay will simplify the issues and reduce unnecessary litigation efforts by the Court and the parties.  The PTAB will have the opportunity to review the Asserted Patents in light of the newly presented prior art references that disclose all of the claim limitations of the Asserted Patent, and the parties and the Court will receive the benefit of this review.

2. <u>Absence of Prejudice</u>. Canatelo will not be prejudiced or tactically disadvantaged by a stay for at least the following reasons: (i) Canatelo has proceeded slowly in all of its litigations, and the delay caused by the IPRs, alone, does not constitute undue prejudice; (ii) the IPR petitions were timely filed prior to any meaningful activity in this litigation, and this motion to stay followed promptly thereafter; and, (iii) Canatelo is an NPE, and is not a competitor of AXIS's, and there is no potential for lost market share or diminishing good will.  Canatelo filed 23 cases, none of which have progressed beyond the very initial stages.  In addition, Canatelo never requested preliminary injunctive relief.

3. <u>Timing</u>.  The present Motion comes at an early stage and will conserve significant party and judicial resources.  The progress in this case is minimal.  AXIS amended its responsive pleadings at Canatelo's request, but Canatelo has still not responded to AXIS's Amended

Counterclaims (D.I. 40 and 41).  Discovery has not begun.  Neither the Court nor the parties should expend further resources, particularly in view of the newly cited invalidating prior art submitted in the IPRs, and the expedited timing of that proceeding.

In view of each of the relevant factors favoring a stay, it is respectfully submitted that AXIS' Motion should be granted.

## III.   LEGAL STANDARDS

A decision to stay litigation lies within the sound discretion of the court and represents an exercise of the court's "inherent power to conserve judicial resources by controlling its own docket." *Neste Oil Oyj v. Dynamic Fuels, LLC, et al.*, C.A. No. 12-1744-GMS, 2013 U.S. Dist. LEXIS 92416, at *3 (D. Del. July 2, 2013) (citations omitted).  This authority extends to patent cases in which a review by the PTO has been requested.  *Id.*, citing *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) ("Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination.").

The following three factors are considered when deciding whether to stay a case: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Id.* (citations omitted).

For the reasons outlined herein, staying the present case would not unduly prejudice or render Canatelo at a disadvantage.  The issues will be greatly simplified.  The case is in its very early stages, and a scheduling order has not yet been entered.

## IV.    LEGAL ARGUMENT

### A.    A Stay Will Simplify The Issues

As this Court has recognized, "there are a number of ways staying a case pending PTO review can simplify litigation:  (1) all prior art presented to the court at trial will have been first considered by the PTO with its particular expertise, (2) many discovery problems relating to the prior art can be alleviated, (3) if patent is declared invalid, the suit will likely be dismissed, (4) the outcome of the reexamination may encourage a settlement without further involvement of the court, (5) the record of the reexamination would probably be entered at trial, reducing the complexity and the length of the litigation, (6) issues, defenses, and evidence will be more easily limited in pre-trial conferences and (7) the cost will likely be reduced both for the parties and the court." *Neste Oil Oyj*, 2013 U.S. Dist. LEXIS 92416, at *12 (citation omitted).  The present litigation will be greatly simplified by a stay pending the outcome of the IPRs, for all of the reasons enumerated by this Court in *Nest Oil Oyj*.

### 1.    The IPR Will Allow The PTAB To Review The Newly Presented Prior Art Against the Asserted Patents

The Asserted Patents claim, in varying levels of detail, video monitoring systems and methods that: (i) detect motion; (ii) send an alarm message in response to detected motion; (iii) send a separate e-mail message with a compressed attachment showing the detected motion; and, (iv) provide a way to "mask" or ignore a portion of the video signal so it is excluded from the motion detection process.[2]  Claim 26 of the '858 Patent and claim 1 of the '111 Patent, which are representative of the claimed inventions, are reproduced below:

---

[2]    This very general description of the most basic shared features of the claims of the Asserted Patents is submitted for the purpose of this motion to stay only, and is not intended to support any claim construction.

| '858 Patent, Claim 26 | '111 Patent, Claim 1 |
|---|---|
| 26. A video monitoring system especially suitable to monitor the security of a facility against an intrusion, comprising: | 1. A computer especially suitable for use as a video-based security system comprising: |
| at least one video camera that generates a video signal; | a plurality of video inputs each configured to receive an electronic video signal from a video camera; |
| a computer operationally coupled with the at least one video camera and configured to receive the video signal, wherein the video signal includes a plurality of frames each having a plurality of cells, and wherein the computer is configured to perform the following functions: | at least one processor operationally coupled with the plurality of video inputs and configurable to operate on a digital representation of the electronic video signals from the plurality of video inputs; and |
| detect motion as between a first and a second frame of the video signal by comparing a plurality of the cells of the first frame to a plurality of the cells of the second frame, wherein the plurality of cells of the first and second frames exclude a user-defined insensitive area, which is completely surrounded by an active area containing the plurality of the cells of the first and second frames; | a network connection to the Internet operationally coupled with the at least one processor, |
| automatically transmit an electronic message upon detection of the motion wherein the electronic message includes a recorded and compressed copy of the video signal beginning approximately coincident with the detection of motion; and | wherein when the computer detects motion in the electronic video signals, the computer generates a compressed representation that includes the motion, and wherein the computer automatically transmits the compressed representation through the network connection as part of an e-mail message only after detecting the motion, and |
| automatically transmit an alarm message separate from the electronic message that alerts a user of the electronic message. | wherein the computer transmits a separate alarm message approximately simultaneous to the transmission of the e-mail. |

The IPR Petitions present new prior art including, *inter alia*: U.S. Patent No. 8,073,921 (Exhibit E, "Thomas"); U.S. Patent No. 5,731,832 (Exhibit F, "Ng"); and, U.S. Patent No. 4,458,266 (Exhibit G, "Mahoney"). These references were not cited during prosecution of the Asserted Patents.

Thomas, having a priority date of July 1, 1997, on its own, teaches almost every element of each of the claims of the Asserted Patents. Thomas teaches "receiving a surveillance image

from a local camera directed at the internal area of the building; comparing the surveillance image with a reference image to produce a comparison result; detecting presence of an activity condition based on the comparison result; and notifying an interested user of the activity condition when the presence of the activity condition is detected. Optionally, the notifying [sic] can transmit the surveillance image to a remote computer over a network when the activity condition is detected." (Ex. E, 2:50-61).   Thomas states, "the transmission of the image and its notification for the interested user can both be performed by sending an electronic mail message to the interested person, where the electronic mail message includes a textual, visual or audio notification and may have the image being transmitted as an attachment to the electronic mail message."  (Ex. E, 8:46-51). Thomas accounts for transmission of compressed image data.  (Ex. E, Fig. 9A, element 912).  Thomas also teaches transmitting a notification in addition to the e-mail message. (Ex. E, Fig. 9A, element 916).

Ng, like Thomas, teaches a system for detecting motion in a video surveillance signal, and sending an alert in response to the detected motion.  If motion is detected, Ng generates an electronic message, including a representation of the captured motion that is transmitted over a network along with a separate alarm.  (Ex. F, 4:49-57).   Ng states that "modem 28 can transmit the image captured at the time the motion was detected to a remote location.  This permits the recipient of the captured image (on the other end of communication medium 30) to immediately view the event triggering the motion detection and respond accordingly." (Ex. F, 4:52-57).  Ng states that the system is capable of "generating a warning tone or other message for transmission across communication medium 30," and "[m]odem 28 is used to remotely monitor the status and operation of image processor 12, and may also be used to contact a police department, security

service, or particular individuals or organizations in response to the detection of motion in image

16." (Ex. F, 4:42-46).

     Mahoney, issued July 3, 1984, teaches a video motion detection system that allows a user

to select which areas of a video image to monitor for motion, and which areas to ignore or

"mask" during the motion detection analysis. (Ex. G, 1:30-35; 7:52-8:11; claims 7, 14). Mahoney

explicitly shows a user-defined mask that includes an inactive area and an active area completely

surrounding the active area. *Id.*, 1:30-35; 7:52-8:11; claims 7, 14.  An example of this masking

feature, as taught by Mahoney, is illustrated in Figures 3 and 7 of Mahoney (Ex. G), reproduced

below:



     Below is a comparison of Thomas Figure 9A and Mahoney Figure 3 to '858 Patent claim

26:



**26.** A video monitoring system especially suitable to monitor the security of a facility against an intrusion, comprising:

at least one video camera that generates a video signal;

a computer operationally coupled with the at least one video camera and configured to receive the video signal, wherein the video signal includes a plurality of frames each having a plurality of cells, and wherein the computer is configured to perform the following functions:

detect motion as between a first and a second frame of the video signal by comparing a plurality of the cells of the first frame to a plurality of the cells of the second frame, wherein the plurality of cells of the first and second frames exclude a user-defined insensitive area, which is completely surrounded by an active area containing the plurality of the cells of the first and second frames;

automatically transmit an electronic message upon detection of the motion wherein the electronic message is a recorded and compressed copy of the video signal beginning approximately coincident with the detection of motion; and

automatically transmit an alarm message separate from the electronic message that alerts a user of the electronic message.

Below is a comparison of Thomas Figure 9A to '111 Patent claim 1:



**1.** A computer especially suitable for use as a video-based security system comprising:

a plurality of video inputs each configured to receive an electronic video signal from a single video camera;

at least one processor operationally coupled with the plurality of video inputs and configurable to operate on a digital representation of the electronic video signals from the plurality of video inputs; and

a network connection to the Internet operationally coupled with the at least one processor, wherein when the computer detects motion in the electronic video signals, the computer generates a compressed representation that includes the motion, and wherein the computer automatically transmits the compressed representation through the network connection as part of an e-mail message only after detecting the motion, and wherein the computer transmits a separate alarm message approximately simultaneous to the transmission of the e-mail.

To summarize the IPR Petitions, newly presented prior art discloses every element of the claims of the Asserted Patents.  There is a significant chance that all claims of the Asserted Patents will be found invalid and canceled, greatly simplifying issues for litigation, and perhaps saving the cost of litigation entirely for all parties.

### 2.  The Court Will Benefit From The PTAB's Expertise

It is highly likely that the PTAB will grant the requested IPRs.  (See Mehta Dec., Exhibit 1).  As recognized by this Court in similar circumstances, if *inter partes* review is granted, the stricter standard for instituting such review suggests a greater likelihood that the PTO will cancel at least some of the challenged claims.  *Neste Oil Oyj*, 2013 U.S. Dist. LEXIS 92416, at *13-14 (citation omitted).  "If the PTO cancelled at least some of the challenged claims in 89% of *inter partes* reexaminations, it seems likely that this percentage will be higher in inter partes reviews, because the inter partes review requests granted by the PTO must satisfy a more restrictive standard."  *Id. quoting Universal Elecs., Inc.*, 2013 U.S. Dist. LEXIS 64154, at *12.

A stay will further simplify this case by potentially resolving or minimizing the patent claim construction and validity issues.  The resources of the Court and parties will be conserved, particularly if the patents at issue here are deemed unpatentable or are narrowed in scope during the IPRs.  If a claim survives *inter partes* review, the court will have the benefit of PTO's expert view.  See, e.g., *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983) (reexamination).  A stay is particularly justified where the PTO proceeding could assist the court in determining patent validity and would eliminate the need to try the infringement issue because claims were canceled during the PTO proceeding.  *Id*.

This Court has recognized that simplifying the issues for trial by potentially reducing the patent claims at issue weighs in favor of granting a stay.  *AIP Acquisition LLC v. Level 3*

*Communications LLC*, C.A. No. 12-1689-GMS, slip op. at 4-5 (D. Del, May 17, 2012).  In *AIP Acquisition*, the Court reasoned that a stay pending *inter partes* review would allow the Court and the parties "to avoid wasting resources on a *Markman* hearing and at trial to address claims that have a 'reasonable likelihood' of being amended or canceled." Id., at 5.  Accordingly, if this case proceeds while the IPRs are pending, significant Court and party resources will likely be wasted.  *See, e.g.*, *Gioello Enterprises Ltd. v. Mattel, Inc.,* 2001 U.S. Dist. LEXIS 26158, at *4 (D. Del. Jan. 29, 2001) ("grant of a stay will maximize the likelihood that neither the court nor the parties expend their assets addressing invalid claims").  A stay of this litigation allows the PTAB to review the Asserted Patents in view of prior art not previously considered, and will allow the Court to benefit from the PTAB's evaluation.

There is an inherent a benefit from the PTO's evaluation of how the previously unconsidered prior art impact the claims of the Asserted Patents.  *See Sorensen v. Black & Decker Corp.*, Case No. 06cv1572 BTM (CAB), 2007 U.S. Dist. LEXIS 66712, at *16-17 (S.D. Cal. Sept. 10, 2007) (reexamination).  The PTO's expert evaluation is likely to be of assistance not only as to the issues of validity, but its understanding of the claims is also likely to aid in the preliminary process of claim construction.  *Id.*, at *17; *Alloc, Inc. v. Unilin Decor N.V.*, C.A. No. 03-253-GMS, 2003 U.S. Dist. LEXIS 11917, at *7 (D. Del. July 11, 2003) ("[T]he court will gain the benefit of the PTO's particular expertise in evaluating the prior art.") (citation omitted).

The IPR process also creates additional intrinsic evidence, in the form of new prosecution history that the Court must consider in construing the claims. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) ("[A] court should… consider the patent's prosecution history" when construing the claims); see also *E. I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1439 (Fed. Cir. 1988).

11

Since both validity and infringement of the Asserted Patents patent are at issue in this litigation, the parties and the Court will benefit from the PTAB's IPR process.

**B.     There Is No Undue Prejudice Or A Clear Tactical Disadvantage To Canatelo**

Courts must consider whether granting a stay would cause the nonmoving party undue prejudice or place it at a clear tactical disadvantage. *Neste Oil Oyj*, 2013 U.S. Dist. LEXIS 92416, at *4. The mere potential for delay is insufficient to establish undue prejudice. *Id.* (citing cases); *Wall Corp. v. BondDesk Grp., L.L.C.*, C.A. No. 07-844-GMS, 2009 U.S. Dist. LEXIS 20619, at *4 (D. Del. Feb. 24, 2009). This Court has considered the following three factors in determining whether there is undue prejudice or a clear tactical advantage: (1) timing of the IPRs and stay request; (2) status of the IPRs; and, (3) the relationship between the parties. *Id*.

The IPRs were filed January 30, 2014, before pleadings in this matter were complete, and some remain outstanding. As shown by the Petitions, the filings necessary to institute an IPR are extensive and technical, and AXIS carefully studied the prior art and filed the Petitions before any meaningful activity in this case. This motion is being filed promptly after the IPR filings. Given the prompt filings, and considering the strong challenge to validity presented by the newly cited prior art relied, it is apparent that there is no improper dilatory motive on behalf of AXIS.

While the IPRs are at an early stage, Canatelo has shown no interest in expediting any of the litigations brought alleging infringement of the Asserted Patents. Canatelo's earliest cases alleging infringement of the Asserted Patents were filed in June 2012. The overwhelming majority of those cases have been dismissed. No case filed by Canatelo has yet progressed to discovery or claim construction. Canatelo has moved to stay the present litigation as to one of the defendants. (D.I. 43). On February 10, 2014, Canatelo joined in a motion to stay in another of its cases, *Canatelo, LLC v. Panasonic Corporation of North America et al.*, Case No. 3:13-cv-

01090-ADC (D.P.R. February 5, 2014) (Exhibit H).  On the other hand, the IPRs must proceed at the statutorily prescribed pace.  35 U.S.C. §§ 314(b), 316(a)(11); 37 C.F.R. § 42.107.

Moreover, Canatelo has not sought preliminary injunctive relief, indicating a lack of potential prejudice. See, e.g., *Neste Oil Oyj*, 2013 U.S. Dist. LEXIS 92416, at *10; *see also Ever Win Int'l Corp. v. Radioshack Corp.*, 902 F. Supp. 2d 503, 510 (D. Del. 2012) ("Plaintiff never sought a preliminary injunction, which suggests that any prejudice to Plaintiff that might result from delaying the ultimate resolution of this dispute is not as severe as it contends.").

Finally, Canatelo is an NPE that does not produce products or compete with AXIS.  *See Pragmatus AV, LLC v. Facebook, Inc.*, No. C 11-0494 EJD, 2011 U.S. Dist. LEXIS 114763, at *12-13 (N.D. Cal. Oct. 5, 2011) (finding that a stay pending reexamination would not prejudice plaintiff, a non-practicing entity).  Canatelo seeks to obtain licenses through patent litigation lawsuits.  There is no risk to Canatelo of lost sales or good will.  *See, e.g., High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1556-57 (Fed. Cir. 1995).

Accordingly, Canatelo will not be unduly prejudiced nor will it face a clear tactical disadvantage if the stay requested by AXIS is granted.

## C.    The Case Is Still At An Early Stage

The next consideration, the stage of litigation, asks "whether discovery is complete and whether a trial date has been set."  *Neste Oil Oyj*, 2013 U.S. Dist. LEXIS 92416, at *12 (citation omitted).  Staying a case in its early stages "can be said to advance judicial efficiency and maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims."  *Neste Oil Oyj*, 2013 U.S. Dist. LEXIS 92416, at *12 (citation omitted)).

The parties filed a Joint Status Report on January 31, 2014 (D.I. 42), and a status conference was held with the Court on February 7, 2014.  The potential for staying the litigation

was discussed during that status conference. No scheduling order has been entered, and no discovery has been conducted. This factor weighs strongly in favor of granting a stay. *Neste Oil Oyj*, 2013 U.S. Dist. LEXIS 92416, at *15-16.

## V.  CONCLUSION

As explained herein, AXIS's Motion to Stay should be granted for at least the following reasons:

- the case will be simplified, the Court will have the benefit of the PTO's expertise regarding the newly cited prior art, and the parties and the Court will not have to devote efforts to considering patent claims under review by the PTO;

- there will be no prejudice to Canatelo, an NPE that does not compete with AXIS; and,

- the case is in its early stages.

Accordingly, AXIS respectfully request that the Court stay this action in its entirety pending the outcome of the *inter partes* reviews of the Asserted Patents.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Anthony S. Volpe
Michael F. Snyder
Gerald B. Halt, Jr.
Aneesha A. Mehta
VOLPE & KOENIG, P.C.
30 S. 17th Street
Philadelphia, PA 19103
Tel: (215) 568-6400

Dated: February 14, 2014
1139439 / 40668

By:   _/s/ David E. Moore_____
      Richard L. Horwitz (#2246)
      David E. Moore (#3983)
      Nicholas J. Brannick (#5721)
      Hercules Plaza 6th Floor
      1313 N. Market Street
      Wilmington, DE  19899
      Tel:  (302) 984-6000
      rhorwitz@potteranderson.com
      dmoore@potteranderson.com
      nbrannick@potteranderson.com

*Attorneys for Defendants*
*AXIS Communications AB and*
*AXIS Communications, Inc.*

15

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

**CERTIFICATE OF SERVICE**

I, David E. Moore, hereby certify that on February 14, 2014, the attached document was

electronically filed with the Clerk of the Court using CM/ECF which will send notification to the

registered attorney(s) of record that the document has been filed and is available for viewing and

downloading.

I further certify that on February 14, 2014, the attached document was Electronically

Mailed to the following person(s):

| | |
|---|---|
| Richard D. Kirk | Eugenio Torres-Oyola |
| Stephen B. Brauerman | Ferraiuoli LLC |
| Vanessa R. Tiradentes | 221 Plaza 5th Floor |
| Bayard, P.A. | 221 Ponce de León Ave. |
| 222 Delaware Avenue, Suite 900 | San Juan, Puerto Rico  00917 |
| P.O. Box 25130 | etorres@ferraiuoli.com |
| Wilmington, DE  19801 | *Attorneys for Plaintiff* |
| rkirk@bayardlaw.com | |
| sbrauerman@bayardlaw.com | |
| vtiradentes@bayardlaw.com | |
| *Attorneys for Plaintiff* | |
| | |
| Francis DiGiovanni | Ray L. Weber |
| M. Curt Lambert | Laura J. Gentilcore |
| Novak Druce Connolly Bove + Quigg LLP | Renner Kenner Greive Bobak Taylor & |
| 1007 N. Orange Street | Weber Co. LPA |
| P.O. Box 2207 | First National Tower, Suite 400 |
| Wilmington, DE 19899 | 106 South Main Street |
| frank.digiovanni@novakdruce.com | Akron, OH  44308 |
| curt.lambert@novakdruce.com | rlweber@rennerkenner.com |
| *Attorneys for Defendant Communications* | ljgentilcore@rennerkenner.com |
| *Supply Corporation* | *Attorneys for Defendant Communications* |
| | *Supply Corporation* |

William J. Cattie, III
Rawle & Henderson, LLP
300 Delaware Avenue, Suite 1105
P.O. Box 588
Wilmington, DE  19899-0588
wcattie@rawle.com
*Attorneys for Defendant Prevent Alarm,*
*Company, L.L.C. (d/b/a Prevent Security &*
*Technology)*

By:   */s/ David E. Moore*
     Richard L. Horwitz
     David E. Moore
     Nicholas J. Brannick
     POTTER ANDERSON & CORROON LLP
     Tel:  (302) 984-6000
     rhorwitz@potteranderson.com
     dmoore@potteranderson.com
     nbrannick@potteranderson.com

1117334/40668